**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ELLEN M. SHIRAH,**

       **Plaintiff,**

**v.**                                  **Case No.  8:05-cv-538-T-TBM**

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

       **Defendant.**

_____/

**<u>O R D E R</u>**

      The Plaintiff seeks judicial review of the denial of her claim for Social

Security disability benefits.  For the reasons set out herein, the decision is affirmed.

**I.**

      Plaintiff was sixty-two years of age at the time of her administrative hearing.

Plaintiff has a high school education.  Her past relevant work was as flower delivery driver, a

prisoner classification interviewer, a records section supervisor, and an administrative clerk.

Plaintiff applied for disability benefits in April 2002, alleging disability as of April 17, 2000,

by reason of degenerative disc disease in her cervical spine, advancing arthritis in her neck

and spine, and headaches.  The Plaintiff's application was denied originally and on

reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  In essence, Plaintiff claimed that she could no longer work at any job because of a history of neck pain dating back to the 1960s.  Over the last twenty-four years, Plaintiff worked in three different positions at the Sheriff's Department.  While working there, Plaintiff underwent a cervical fusion in September of 1997.  Afterwards, she was able to return to work on a full-time basis even though she continued to experience pain.  Plaintiff last worked at the Sheriff's Department in April 2000, at which time she was hospitalized for a "stomach bleed."  Plaintiff stated that while the stomach bleed resolved, she did not return to work.  According to Plaintiff, her physician advised her to not return to work because her condition was deteriorating.  Plaintiff remained employed and received sick pay through June 17, 2000, at which time she retired.  Some eight to ten months later, Plaintiff began a part-time job delivering flowers.  Plaintiff stated that her employer let her work when she was able to, and she usually worked a couple of days a week, about five hours a day.  She did that work for three years, but had to quit due to her neck pain in February 2004.

Plaintiff testified that she also had cataract surgery in both eyes, but she is able to see with glasses and can drive at night.  She also described an allergic reaction accompanied by high blood pressure that she had in March 2004 in which she went to the hospital by ambulance.  By her account, testing revealed an old stroke in the left side of her brain but no present neurological problems.  Plaintiff takes numerous medications including Arthrotec (nonsteroidal anti-inflammatory), Accupril (ACE inhibitor used to treat high blood pressure), Skelaxin (muscle relaxant), Ultracet (pain reliever), Hydrocodone (narcotic pain

reliever and cough suppressant), and Premarin and Estratest (both used in hormone replacement therapy).  She stated that all of the medication makes her drowsy or dizzy and she constantly fights fatigue.  Plaintiff has also had a number of injections in her neck to manage her pain.  She reported that they have helped the right side of her neck but not the left.

Plaintiff lives by herself in her own home.  On a typical day, she gets up around 7:30 or 8:00 a.m., makes something to eat so that she can take her medication, reads the paper, and takes a hot shower.  She picks up her granddaughter everyday at 2:40 p.m. and takes her home; around 3:30 p.m. she naps with her granddaughter for about an hour.  Plaintiff does not engage in activities that require her to look down while seated.  She spends most of her day reading or watching television while lying on the couch with her feet up and pillows behind her.  Plaintiff said she does the dishes but tries to keep her neck as straight as possible.  She drives, does her own grocery shopping and laundry, and she cooks with a microwave.  Her son does the vacuuming when he visits.  Plaintiff does not garden or do yard work.  She does not have a home computer.  Plaintiff goes to bed around 11:00 p.m. or 12:00 a.m.  She has difficulty sleeping and wakes up two to three times a night due to pain.

By Plaintiff's estimation, she can frequently lift ten pounds.  Bending her neck downward so as to write something or read something is difficult.  Plaintiff stated that she could not tolerate any activity that required her to look down for a prolonged period of time or turn her neck from side to side frequently.  Instead of turning her neck, Plaintiff attempts to turn her body.  The only position that is comfortable for her is to have her feet up and a pillow or two behind her neck for support.  Sitting with her head up and unsupported is

3

difficult; Plaintiff said she can do so for only about five minutes.  Plaintiff admitted that since she stopped working her primary care doctor has not advised her of any restrictions.  See Plaintiff's testimony (R. 334-56).

The ALJ also took testimony from Dr. Steven Simon, a vocational expert (hereinafter "VE").  Assuming an individual between the ages of sixty and sixty-two with a high school education and past work experience similar to that of Plaintiff, who could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk for about six hours in an eight-hour day, and sit for about six hours in eight-hour day, the VE testified that Plaintiff could perform all of her past relevant work as customarily performed except for the florist delivery job.[1]  Upon the additional limitations of avoidance of concentrated exposure to hazards and the ability to climb, balance, stoop, kneel, crouch, and crawl frequently, the VE opined that the same past work could be performed.  However, upon the additional restrictions of no prolonged activity requiring forward flexion of the neck or rotation of the neck from side to side, the VE testified that all past work would be precluded.[2]  See VE's testimony (R. 356-58).

_____

[1]The VE classified Plaintiff's past relevant work as follows: (1) deliverer, merchandise, DOT # 299.477-010, medium exertional level; (2) prisoner classification interviewer, DOT # 166.267-022, sedentary exertional level; (3) records section supervisor, DOT # 206.137-010, light exertional level; and (4) administrative clerk, DOT # 219.362-010, light exertional level.  (R. 104).

[2]The VE also testified with respect to transferable skills and alternative work in the national economy, identifying information clerk, service establishment attendant, and some receptionist type jobs as the type of work also available to the Plaintiff under the hypothetical. By the VE account, these jobs would require forward flexion or rotation of the neck only occasionally. (R. 358-64).  The issues raised on this appeal do not reach this testimony.

4

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of August 27, 2004, the ALJ determined that while Plaintiff has severe impairments related to degenerative disease and arthritis of the spine, she nonetheless had the residual functional capacity to perform a limited range of light exertional work. Upon this finding and testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as a prisoner classification interviewer, a records section supervisor, and an administrative clerk as such jobs are customarily performed. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 16-20). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

5

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises three claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1)  The ALJ's finding that the claimant was not precluded from performing her past relevant work is not supported by substantial evidence;

(2)  The ALJ's findings that the claimant's complaints and symptoms were not supported by objective clinical findings and evidence is not supported by substantial evidence; and

(3)  The ALJ failed to properly apply the Commissioner's regulations and policy respecting the evaluation of pain and other symptoms and is contrary to established law in the Eleventh Circuit respecting the evaluation of pain.

All three claims challenge the ALJ's findings at step four of the sequential evaluation.  Specifically, each claim involves the ALJ's consideration of Plaintiff's allegation that she is unable to engage in prolonged activity requiring forward flexion of the neck or

rotation of the neck from side to side.[3]  Because of their inter-relatedness, Plaintiff's claims are addressed together.

First, Plaintiff argues that the ALJ's finding that she could perform her past relevant work is unsupported in light of the VE's testimony that she could *not* perform past work due to her restricted neck movement.  Thus, Plaintiff essentially challenges the ALJ's credibility determination with respect to those particular limitations on the basis that the restrictions should have been credited, included in the ALJ's assessment of her residual functional capacity (hereinafter "RFC"), and precluded the finding that she could perform her past work and was therefore not disabled.  In Plaintiff's view, her allegations of neck pain and resulting limitations are fully supported by the record and the ALJ's reasons for discrediting them are not.  Next, Plaintiff argues that the ALJ erroneously discounted her allegations on the basis that they were not supported by objective evidence and clinical findings.  Lastly, Plaintiff argues that the ALJ failed to properly apply Social Security Ruling (hereinafter "SSR") 96-7p and the Eleventh Circuit's "pain standard."[4]  By this argument, Plaintiff suggests the ALJ erred by failing to find that she had a medically determinable impairment that could produce the symptoms alleged and provide supportable reasons for discounting her neck-related complaints.  Plaintiff urges that her case should be reversed and remanded for a

---

[3]A fair reading of Plaintiff's testimony suggests that she also claims she can sit for only about five minutes without the back of her head being supported.  (R. 350).  The ALJ's rejection of this allegation is not challenged.

[4]The pertinent portions of SSR 96-7p relied upon by Plaintiff parallel the Eleventh Circuit's pain standard.  Compare Landry, 782 F.2d at 1553; with S.S.R. 96-7p, 1996 WL 374186, * 2, 3 (S.S.A).  Plaintiff's contentions, therefore, are analyzed under the controlling case law.

determination of whether she is capable of performing other work at step five of the sequential evaluation.

In reaching his decision, the ALJ applied the five-step sequential evaluation process dictated by the Regulations. See 20 C.F.R. § 404.1520. The decision was reached at the fourth step of the process. At this step, the ALJ must determine whether the claimant is capable of performing her past relevant work. Id. at § 404.1520(e). The review at this step involves the assessment of a claimant's residual functional capacity,[5] which encompasses the consideration of the claimant's impairments, including subjective symptoms such as pain,[6] and requires consideration of the physical and mental demands of her former work. If a claimant can still do the kind of work she has done in the past, then the Regulations require

_____

[5]Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); Lewis v. Callahan, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. Id. Here, the ALJ determined that Plaintiff retained the RFC to perform light exertional work that did not require more than frequent postural activities or concentrated exposure to hazards. (R. 17).

[6]In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Id. at 1562.

that she be found not disabled.[7]  Id.  At this stage of the evaluation process, the burden is on the Plaintiff to show that she can no longer perform her past relevant work.  Jackson v. Bowen, 801 F.2d 1291, 1292 (11th Cir. 1986).

Because all three of Plaintiff's claims rest on the assertion that the ALJ improperly discounted her alleged neck limitations regarding prolonged flexion and rotation, the ALJ's consideration of this testimony within the confines of the pain standard is addressed first.  Here, when assessing Plaintiff's RFC, the ALJ acknowledged that he "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p."  (R. 17).  Although the ALJ did not expressly refer to the "pain standard," his reference to the regulatory provision and ruling reveals his understanding of the applicable standard, and a fair reading of the decision reflects his application of the standard.  See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).  Thus, the ALJ found that Plaintiff had medically determinable impairments, namely, degenerative disease and arthritis of the [cervical] spine, that could reasonably give rise to the type of neck pain and limitations alleged, just not to the extent that

---

[7]A determination that a claimant can perform her past relevant work, and thus is not disabled, is appropriate where the claimant retains the residual functional capacity to perform the actual functional demands and job duties of a particular past job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-62, 1982 WL 31386, *3 (S.S.A.); SSR 82-61, 1982 WL 31387, * 2 (S.S.A.).  Where, as here, it is determined that a claimant can perform a past job as it is usually performed in the national economy, an ALJ may rely upon job descriptions set forth in the DOT.  See SSR 82-61 at * 2.

she was precluded from any prolonged activity that required forward flexion of the neck or rotation of the neck from side to side.

Further, the ALJ provided adequate reasons for discounting Plaintiff's subjective neck allegations.  To this end, the ALJ explained that the alleged restrictions clearly were not warranted from the claimed onset date through September 6, 2000, as the record did not reveal any significant treatment for neck pain during that period.  (R. 17).  He explained further that while Plaintiff's neck pain was exacerbated by a parasailing incident in August 2000,[8] she did not seek treatment until September 7, 2000.  Id. at  17-18.  These reasons are rational and supported by the record.  As for the remaining time period, the ALJ fairly reviewed the reports and ultimately rejected the alleged neck restrictions on the basis of the medical record in general.  The ALJ noted that Plaintiff responded well to treatment at times of exacerbation and was able to maintain a reasonable level of comfort if she avoided certain activities.  Id. 18-19.  While the latter of these reasons is rather general, both reasons ultimately are supported by substantial evidence.  For example, while Plaintiff's neck pain may have improved because she was no longer working a stressful desk job, her periods of pain requiring treatment were not constant.  There was almost a two and a half year period from April 2001 through July 2003 when the only treatment Plaintiff received was from her primary doctor who prescribed medication for her chronic neck pain.  Moreover, aside from one notation of "muscles knotted," (R. 215), Plaintiff's primary doctor did not prescribe limitations or include any findings in the "pertinent findings" section of her treatment notes.

---

[8]The fact that Plaintiff was parasailing rather speaks for itself also.

Treatment notes confirm that she responded favorably to treatment.[9]  Notably, Plaintiff does not address that she had worked for several years with the neck condition and her alleged onset date coincided with a stomach problem and subsequent retirement, not a neck exacerbation.  Moreover, although Plaintiff testified that her surgeon and primary doctor both advised her to stop working, I cannot find any record of such advice reflected in the notes.  While Plaintiff is correct that clinical or objective evidence is not required to substantiate allegations of disabling pain, it is relevant to the ALJ's assessment of Plaintiff's credibility that over the course of at least eighteen visits, the primary doctor did not note complaints of disabling pain, recommend another surgery, or record muscle tightness or a restricted range of motion.  In any event, my reading of the decision reveals that the ALJ did not require an objective showing in this case.

   For the reasons set forth above, I am constrained to find that the record supports the ALJ's rejection of Plaintiff's claimed neck limitations.[10]  As such, the ALJ was

---

   [9]While Plaintiff saw pain specialists between October 2000 and March 2001 and between August 2003 and January 2004, the treatment notes during that time reveal occasions in which Plaintiff was "feeling great," said that Arthrotec "was wonderful," initially got excellent relief from injections but pain returned after babysitting, had complete resolution of pain in the right side of her neck, and reported that the pain was greatly improved.  See, e.g., (R. 237-56, 290-313).  The record also reflects that, prior to her alleged onset date in April 2000, Plaintiff reported severe and chronic neck pain to her doctors both before and after her neck fusion yet maintained full-time employment.  See, e.g., (R. 127, 134, 155, 160).

   [10]I do not question that Plaintiff experienced some degree of neck pain, however, the medical record did not require a conclusion that she was limited in neck flexion and rotation to the degree claimed or that the pain could not be adequately maintained so as to allow her to work.  It is worth reiterating that, even if the court finds that the evidence preponderates against an ALJ's decision, it may not reweigh the evidence or substitute its own judgment for that of the ALJ.  See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Bloodsworth, 703 F.2d at 1239.

not obliged to include those restrictions into his RFC determination or consider such when assessing Plaintiff's ability to engage in past work.  Cf. Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001) (providing that an ALJ is not required to include in a hypothetical question those limitations he concludes are not credible); House v. Shalala, 34 F.3d 691, 694 (8th Cir. 1994) (same).  As such, because Plaintiff's claims each rely on the credibility of those restrictions, the claims fail.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 24th day of March 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

13